UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X   **Docket No.**

BOB RAMSEY,

                         Plaintiff,                  **COMPLAINT**

         -against-

J.C. SKYNET SERVICE, LLC, d/b/a/
J.C. SKYNET LOGISITCS SERVICE, LLC, and    ***PLAINTIFF DEMANDS***
JULIAN ANTONOVICI, *In His Individual and*    ***A TRIAL BY JURY***
*Official Capacities*,

                         Defendants.

-------------------------------------------------------------X

PLAINTIFF BOB RAMSEY, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys

at Law, PLLC, hereby complains of SKYNET DEFENDANTS, upon information and belief, as

follows:

## NATURE OF THE CASE

1.    PLAINTIFF complains pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified,

    <u>42 U.S.C</u>. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

    1991, Pub. L. No. 102-166) (Title VII); <u>42 U.S.C.</u> § 1981, and the <u>New York State</u>

    <u>Human Rights Law</u>, <u>New York State Executive Law</u> §§ 296, *et seq.* ("<u>NYSHRL</u>"), and

    seeks damages to redress the injuries PLAINTIFF has suffered as a result of being

    **<u>discriminated against</u>** on the basis of his **<u>Race/Color (African American/Black)</u>**, and

    then **<u>retaliated against,</u>** subjected to a hostile work environment and constructively

    **<u>terminated</u>** by his employer for complaining of discrimination.

2.    PLAINTIFF was employed by DEFENDANT J.C. SKYNET SERVICE, LLC, d/b/a/ J.C.

    SKYNET LOGISITCS SERVICE, LLC, as a truck driver until he was wrongfully

    terminated as described below.

3.     PLAINTIFF was a productive member of DEFENDANT J.C. SKYNET SERVICE, LLC, d/b/a/ J.C. SKYNET LOGISITCS SERVICE, LLC until he started complaining about unlawful discrimination. SKYNET DEFENDANTS, specifically DEFENDANT ANTONOVICI, dismissed PLAINTIFF'S complaints and began to subject PLAINTIFF to unlawful retaliation for complaining.

4.     Despite PLAINTIFF'S complaints, DEFENDANTS did nothing to stop or control PLAINTIFF'S Supervisor/Manager, DEFENDANT ANTONOVICI, from discriminating, harassing and retaliating against PLAINTIFF.

5.     As a result of PLAINTIFF'S complaints, all of a sudden, PLAINTIFF began to suffer adverse employment actions, PLAINTIFF'S work hours were significantly reduced, PLAINTIFF'S driving routes were taken away and given to other drivers, DEFENDANTS hired new drivers to replace PLAINTIFF, PLAINTIFF was forced into financial hardship, made to sit home and was never returned to work – unlike his similarly situated coworkers, who did not complain about discrimination at JC SKYNET.

6.     PLAINTIFF was then wrongfully terminated in direct retaliation for complaining about discriminatory practices by his boss, DEFENDANT ANTONOVICI, at JC SKYNET.

7.     PLAINTIFF asserts that SKYNET DEFENDANTS allowed a hostile work environment to exist that was permeated with humiliation, ridicule, insults, discrimination and retaliation against African American, including PLAINTIFF, simply because of his race/color in violation of the subject statutes herein.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

8.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

9.     The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought

2

under State and City law pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more SKYNET DEFENDANTS reside within the Eastern District of New York or the acts complained of occurred therein.

11. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 24, 2020; (b) receiving a Notice of Right to Sue from the EEOC on December 28, 2020; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

12. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

13. At all times relevant hereto, **PLAINTIFF BOB RAMSEY ("PLAINTIFF")** is a 33-year-old African American male and a resident of Queens County, New York. PLAINTIFF was employed by **DEFENDANT J.C. SKYNET SERVICE, LLC, d/b/a/ J.C. SKYNET LOGISITCS SERVICE, LLC** from on or about June 26, 2019 until on or about April 18, 2020, as a "Truck Driver."

14. **DEFENDANT J.C. SKYNET SERVICE, LLC, d/b/a/ J.C. SKYNET LOGISITCS SERVICE, LLC (hereinafter, "JC SKYNET")** is a domestic limited liability company that exists under the laws of the State of New York. **DEFENDANT JC SKYNET** employs well over fifteen employees.

15. Upon information and belief, **DEFENDANT JC SKYNET** owns and/or operates a location at 210 B Engineers Drive, Hicksville, New York 11801, where the discriminatory conduct took place.

16. That at all times relevant hereto, PLAINTIFF was an employee of **DEFENDANT JC**

**SKYNET**.

17.    **DEFENDANT JULIAN ANTONOVICI (hereinafter "ANTONOVICI")** is an "Owner" for **DEFENDANT JC SKYNET**. **DEFENDANT ANTONOVICI** was PLAINTIFF'S direct manager, supervisor, and had supervisory authority over PLAINTIFF. **DEFENDANT ANTONOVICI** had the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of same. **DEFENDANT ANTONOVICI** is being sued herein in his individual and official capacity.

18.    **DEFENDANT ANTONOVICI** is a Caucasian male.

19.    **DEFENDANTS, JC SKYNET and ANTONOVICI**, are collectively referred to herein as "**SKYNET DEFENDANTS.**"

## MATERIAL FACTS

20.    On or about June 26, 2019, PLAINTIFF was hired by DEFENDANT JC SKYNET as a "Truck Driver."

21.    PLAINTIFF worked Tuesday to Saturday from 4:00 AM until his route was finished. On average, PLAINTIFF worked approximately 30 to 40 hours per week – at first.

22.    PLAINTIFF possessed the necessary credentials to operate trucks, was an above-satisfactory employee, was never reprimanded or disciplined for his performance, was relied upon by his employer and was otherwise qualified to perform the duties of his employment.

23.    On or about July 15, 2019, PLAINTIFF was working with DEFENDANT ANTONOVICI.

24.    While working, DEFENDANT ANTONOVICI began to discuss the economy and told PLAINTIFF, among other things, that "*the world is a much better place now that Donald*

*Trump is in office*."

25.     When PLAINTIFF responded that he believed that former President Obama was better, DEFENDANT ANTONOVICI replied "***why...because he's black and he's done things for you black people?***"

26.     PLAINTIFF felt deeply offended by DEFENDANT ANTONOVICI'S racial comment and could tell that DEFENDANT ANTONOVICI had a discriminatory animus towards African Americans, which was only supported by DEFENDANT ANTONOVICI'S continued conduct.

27.     But, as PLAINTIFF was newly-hired and did not want to jeopardize his employment, PLAINTIFF did not express concern.

28.     In or around the end of August 2019, DEFENDANT ANTONOVICI was interviewing a potential new hire/candidate for an available driver position.

29.     As PLAINTIFF walked past DEFENDANT ANTONOVICI, DEFENDANT ANTONOVICI told the interviewee, known as Jason (Last Name Unknown) ("Jason"), that PLAINTIFF was the Manager. Jason is an African American male.

30.     PLAINTIFF, confused, introduced himself to Jason and began to explain details about the role and tasks of drivers at SKYNET.

31.     After Jason and PLAINTIFF finished discussing the job, and after Jason left the facility, DEFENDANT ANTONOVICI asked PLAINTIFF for his opinion about Jason.

32.     PLAINTIFF told DEFENDANT ANTONOVICI that he could see that Jason appeared eager to work.

33.     DEFENDANT ANTONOVICI responded, in substance, "*I like dealing with guys who have a family at home because they come ready for work*."

34.     But then, DEFENDANT ANTONOVICI continued, "***I like working with Spanish and***

*Mexicans, more than Blacks. They work harder. I'll choose them over Blacks anytime*."

35.    PLAINTIFF was extremely offended by DEFENDANT ANTONOVICI'S clear racially-based discriminatory comment.

36.    As an African American, PLAINTIFF was confused about why DEFENDANT ANTONOVICI would openly share his discriminatory beliefs with PLAINTIFF.

37.    In or around the second week of October 2019, DEFENDANT ANTONOVICI bought a refrigerator for the warehouse. The refrigerator was tied with a stretch cord, which was being used to hold the door closed.

38.    Shortly thereafter, in or around late November 2019, the stretch cord that was wrapped around the refrigerator went missing.

39.    DEFENDANT ANTONOVICI came into the warehouse extremely upset about the missing cord and yelled "*where's the fucking cord? Niggers took the fucking cord*!"

40.    PLAINTIFF and Jonathan McDonald ("Mr. McDonald"), a Linehaul Driver, heard the comment, were extremely shocked and offended and both responded, "*What*?"

41.    DEFENDANT ANTONOVICI again responded, "*yeah fucking niggers took the fucking cord*!"

42.    PLAINTIFF and Mr. McDonald both looked at each other again, in shock, and continued doing their jobs.

43.    PLAINTIFF and Mr. McDonald did not complain because DEFENDANT ANTONOVICI was the boss, was upset at the time and PLAINTIFF did not want to risk his employment.

44.    In or around the second week of December 2019, PLAINTIFF ordered personal items and had them delivered to the job site.

45.   When PLAINTIFF came into work, DEFENDANT ANTONOVICI asked PLAINTIFF if he had "***drugs***" coming in those packages.

46.   PLAINTIFF responded, "*what would make you think something like that?"*

47.   DEFENDANT ANTONOVICI laughed and replied, "***You know how y'all people do***."

48.   PLAINTIFF said, "*No, I don't know how my people do*."

49.   DEFENDANT ANTONOVICI laughed and repeated, "***you know, your people***."

50.   For some reason, DEFENDANT ANTONOVICI was comfortable chastising PLAINTIFF with racially derogatory language/comments against Black people.

51.   Approximately one week later, in or around the week of December 16, 2019, PLAINTIFF went into the dispatchers' office to retrieve a package that was delivered for PLAINTIFF.

52.   Kassandra Marti ("Ms. Marti"), Dispatcher, reached into a cabinet and pulled out PLAINTIFF'S package. But, the package was tampered with and opened.

53.   PLAINTIFF believed that DEFENDANT ANTONOVICI opened the package because of what he had said just a week prior.

54.   Later that week, DEFENDANT ANTONOVICI began scolding PLAINTIFF for continuing to have his packages delivered to the warehouse, stating "*what did I tell you about the deliveries to my place*."

55.   PLAINTIFF explained that he had Christmas gifts delivered to the job, as opposed to his home, because they contained Christmas gifts for his family and PLAINTIFF did not want his family to open the packages.

56.   DEFENDANT ANTONOVICI responded "*No more gifts*" and PLAINTIFF agreed that he would not have any more packages delivered to the office.

57.   Later that day, still annoyed about ANTONOVICI'S "*drug*" comment, PLAINTIFF

approached DEFENDANT ANTONOVICI, and complained about DEFENDANT ANTONOVICI'S discriminatory conduct in the workplace.

58. PLAINTIFF told DEFENDANT ANTONOVICI, "*Julian, it's not right. You're being very racist with your remarks and I'm not helping you go gas up the vans anymore. I'm going to just do what I'm getting paid for.*"

59. PLAINTIFF explained that he would not continue to do assignments that he was not being paid for because the work environment was too offensive. At this point, PLAINTIFF just wanted to do his job and get out of the hostile environment.

60. DEFENDANT ANTONOVICI began screaming at PLAINTIFF, "*You have to do whatever I say!*"

61. DEFENDANT ANTONOVICI continued to scream, "*I'm gonna start firing mother fuckers.*"

62. As PLAINTIFF was walking away, he heard DEFENDANT ANTONOVICI say, "*Fucking Blacks.*"

63. DEFENDANT ANTONOVICI'S racially derogatory response to PLAINTIFF'S complaint caused PLAINTIFF to understand that any complaints of discrimination at JC SKYNET would be futile and would subject PLAINTIFF to further hostility.

64. DEFENDANT ANTONOVICI did not care and was not concerned about PLAINTIFF'S complaints.

65. If DEFENDANT JC SKYNET had any antidiscrimination policies or protocols, same had no force or effect and were futile as well – to the detriment of PLAINTIFF. The boss, DEFENDANT ANTONOVICI, was the main offender.

66. In or around mid-to-end February 2020, other drivers at JC SKYNET started to express that they were feeling mistreated by DEFENDANT ANTONOVICI.

67.   On or about February 29, 2020, PLAINTIFF and other Drivers, including Victor Mookerjee ("Mr. Mookerjee"), Jose Acosta ("Mr. Acosta"), Kelvin Rosario ("Mr. Rosario"), and John Martir ("Mr. Martir"), came to the warehouse and had a meeting with DEFENDANT ANTONOVICI.

68.   Mr. Mookerjee is an Indian male.

69.   Mr. Acosta is a Hispanic male.

70.   Mr. Rosario is a Hispanic male.

71.   Mr. Martir is a Hispanic male.

72.   The drivers expressed to DEFENDANT ANTONOVICI that they wanted better pay, better treatment, $100.00 raise, and proper payment on a Form W-2 as opposed to a Form 1099. The drivers continued that these things were promised to them earlier in the year.

73.   Soon thereafter, PLAINTIFF learned that DEFENDANT ANTONOVICI began speaking to the other drivers and was planning on making cuts to employees' pay and work hours.

74.   However, DEFENDANT ANTONOVICI had no discussion(s) with PLAINTIFF.

75.   On or about March 11, 2020, DEFENDANT ANTONOVICI called PLAINTIFF and told PLAINTIFF that he was cutting PLAINTIFF to 3 days per week and $120.00 per day.

76.   DEFENDANT ANTONOVICI asked PLAINTIFF if he wanted the days.

77.   PLAINTIFF said yes and asked why the days were being cut.

78.   DEFENDANT ANTONOVICI replied, "*because D'Artagnan's cutting the pay.*"

79.   But, PLAINTIFF later learned PLAINTIFF learned directly from the other drivers that that he was the only individual that had his hours and pay cut, unlike his similarly-situated coworkers.

80.   In fact, DEFENDANT ANTONOVICI also hired new (similarly situated) employees/drivers at that time.

81.  The only difference between Plaintiff and his coworkers were their respective races and the fact that PLAINTIFF complained about discrimination and racial comments in the workplace.

82.  PLAINTIFF'S hours and pay were reduced in retaliation for making a complaint of discrimination, engaging in protected activity and voicing his concerns in the workplace.

83.  Those who did not engage in protected activity like PLAINTIFF were not subjected to the same adverse employment actions.

84.  On or about April 11, 2020, PLAINTIFF called DEFENDANT ANTONOVICI and asked DEFENDANT ANTONOVICI again about his reduced schedule and pay rate decrease.

85.  DEFENDANT ANTONOVICI maintained that everyone else's schedules were being reduced just like PLAINTIFF, which PLAINTIFF knew to be false.

86.  On or about April 17, 2020, PLAINTIFF again spoke DEFENDANT ANTONOVICI and expressed the extreme financial hardship that Plaintiff (and his family) would face as a result of the pay/hours cut.

87.  DEFENDANT ANTONOVICI looked at PLAINTIFF, shrugged his shoulders, and told PLAINTIFF, "*I don't have money either. **You people can figure it out**.*"

88.  PLAINTIFF understood "***you people***" to mean African Americans and became offended because DEFENDANT ANTONOVICI continued to make racially insensitive comments despite knowing that PLAINTIFF was offended by same.

89.  PLAINTIFF again complained to DEFENDANT ANTONOVICI that he did not appreciate being referred to as "*nigger*" and/or "*you people*" in the workplace.

90.  Rather than address his own discriminatory conduct, DEFENDANT ANTONOVICI ignored PLAINTIFF'S concerns, walked away from PLAINTIFF and left the premises.

91. Again, PLAINTIFF'S concerns about the racially hostile work environment were not addressed.

92. On or about April 18, 2020, PLAINTIFF called DEFENDANT ANTONOVICI and again expressed to DEFENDANT ANTONOVICI that the schedule and pay cuts was making it financially impossible to continue to work at JC SKYNET.

93. PLAINTIFF continued that it was not fair that his days were being taken away and given to new hires, while most of the other drivers and employees kept their same schedules.

94. DEFENDANT ANTONOVICI responded by falsely alleging, again, that all employees were getting the same schedule and accused PLAINTIFF of trying to "*strong-arm*" him.

95. On or about April 20, 2020, DEFENDANT ANTONOVICI called PLAINTIFF and asked PLAINTIFF what he was going to do about working for SKYNET DEFENDANTS.

96. PLAINTIFF again requested a fair schedule, similar to his Non-African American counterparts.

97. DEFENDANT ANTONOVICI again falsely claimed that the other drivers/employees were only getting 2 to 3 days per week.

98. PLAINTIFF continued to confirm with the other drivers that this information was false.

99. On or about April 21, 2020, another employee, Mr. McDonald, reported to PLAINTIFF that DEFENDANT ANTONOVICI was getting comfortable using the N-word in the workplace around employees and was using the word on multiple occasions.

100. Since on or about April 20, 2020, PLAINTIFF was forced out of work, due to the discriminatory cut in hours, compared to his Non-African American counterparts and could not continue to work at JC SKYNET under those conditions.

101. PLAINTIFF operated "Route 12," which was PLAINTIFF'S normal daily driving route.

102.    DEFENDANT ANTONOVICI falsely told PLAINTIFF that Route 12 had no work as an excuse for cutting PLAINTIFF'S hours.

103.    But, PLAINTIFF continued to confirm that Route 12 was still operating and had no reduction in work. Indeed, DEFENDANT ANTONOVICI gave PLAINTIFF'S Route to another (non-African American) driver.

104.    Upon information, not belief, PLAINTIFF'S route, Route 12, was given to one of the new drivers hired by DEFENDANTS after falsely advising PLAINTIFF that his hours would be cut.

105.    Eventually, DEFENDANT ANTONOVICI stopped calling PLAINTIFF into work altogether, while telling PLAINTIFF that he would contact PLAINTIFF as soon as they had work for him.

106.    PLAINTIFF was the only driver treated in this fashion and fully cut from the schedule.

107.    PLAINTIFF sat idle, at home, waiting to be called in for work. No such call ever came and PLAINTIFF was without employment.

108.    PLAINTIFF continued to call DEFENDANTS for work and DEFENDANT ANTONOVICI continued to (falsely) assert that they would call PLAINTIFF when there was work.

109.    Meanwhile, a (non-African America) driver was performing PLAINTIFF'S duties and driving PLAINTIFF'S route the entire time, while PLAINTIFF sat home waiting to be called.

110.    DEFENDANTS never called PLAINTIFF back into work and effectively terminated his employment.

111.    Upon information and belief, it was the intent of DEFENDANTS to force PLAINTIFF out of work by cutting PLAINTIFF'S hours to the point that working at JC SKYNET

became impractical because he was a complainer, who engaged in protected activity.

112. PLAINTIFF was constructively and actually terminated from his position due to JC SKYNET DEFENDANTS' retaliatory cut in hours, as a result of PLAINTIFF'S multiple complaints of race/color discrimination.

113. It was the intent of DEFENDANTS to force PLAINTIFF to leave the job – following PLAINTIFF'S multiple complaints about discrimination.

114. SKYNET DEFENDANTS did nothing about and did not conduct a good faith investigation into, any of PLAINTIFF'S multiple complaints.

115. PLAINTIFF'S complaints were futile and SKYNET DEFENDANTS did not take PLAINTIFF'S complaints seriously.

116. Upon information and belief, DEFENDANT SKYNET does not have an anti-discrimination/retaliation policy in place.

117. DEFENDANTS SKYNET do not have a policy or procedure regarding making complaints of discrimination in the workplace and employees are not trained or instructed on how to bring any such complaints.

118. In the alternative, if DEFENDANT JC SKYNET did have a policy regarding discrimination and harassment in the workplace, SKYNET DEFENDANTS' anti-discrimination policies were futile and/or not taken seriously by SKYNET DEFENDANTS - to the detriment of PLAINTIFF.

119. DEFENDANT ANTONOVICI supported, condoned, ratified, and approved of the discrimination, wrongfully retaliatory constructive termination, and racially-hostile work environment at DEFENDANT JC SKYNET.

120. SKYNET DEFENDANTS allow(ed) an environment to exist that is permeated with discriminatory acts, retaliation, adverse employment actions, humiliation, and other

unlawful acts against its African American and/or Black employee PLAINTIFF (and others).

121. DEFENDANT ANTONOVICI was acting pursuant to his employments as agents, employees, and representatives of his Principal, DEFENDANT JC SKYNET.

122. SKYNET DEFENDANTS, their employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against PLAINTIFF.

123. **COLLECTIVE DEFENDANTS' actions constituted a <u>continuing violation</u> of PLAINTIFF'S rights under the statutes at issue.**

124. As a result, PLAINTIFF was humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

125. SKYNET DEFENDANTS' conduct was malicious, willful, outrageous, in reckless disregard, and conducted with full knowledge of the law.

126. Punitive damages are warranted against SKYNET DEFENDANTS individually and collectively.

**AS A FIRST CAUSE OF ACTION**
**FOR *DISCRIMINATION* UNDER TITLE VII**
*(Against Defendant JC SKYNET)*

127. PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

128. This claim is authorized and instituted pursuant to the provisions of <u>Title VII</u> of the Civil

Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of DEFENDANT JC SKYNET.

129.    DEFENDANT JC SKYNET engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e *et seq*., by discriminating against PLAINTIFF because of his race/color.

130.    PLAINTIFF was subjected to discrimination and retaliation at DEFENDANT JC SKYNET as alleged above.

131.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially motivated adverse employment actions, retaliation, constructive discharge, differential treatment, unfair performance reviews, selective supervision, harassment, abuse, wrongful termination, and other discriminatory acts.

132.    PLAINTIFF complained about the discriminatory abuse he faced at the hands of his supervisor and said complaint(s) were futile and ignored.

133.    Instead, PLAINTIFF was further subjected to a retaliatory hostile working environment, termination, adverse employment action, and other unreasonable acts due to his race/color.

134.    PLAINTIFF was then wrongfully or constructively terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws, as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

135.    SKYNET DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

136.    Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT JC SKYNET.

137.    At all times, DEFENDANT JC SKYNET was aware and/or had actual and constructive

notice of its racially hostile work environment against PLAINTIFF and took no action to abate or correct same.

138. Instead, SKYNET DEFENDANTS attacked and retaliated against PLAINTIFF, who engaged in a protected activity while allowing the perpetrators to escape discipline.

139. DEFENDANT JC SKYNET'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by SKYNET DEFENDANTS in any regard - to the detriment of PLAINTIFF.

140. But for DEFENDANT ANTONOVICI'S respective positions at DEFENDANT JC SKYNET, SKYNET DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

141. PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

142. DEFENDANT JC SKYNET is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

143. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

144. SKYNET DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

145. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS A SECOND CAUSE OF ACTION**

## FOR *RETALIATION* UNDER TITLE VII
### *(Against Defendant JC SKYNET)*

146.  PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

147.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

148.  DEFENDANT JC SKYNET engaged in unlawful employment practice prohibited by 42 U.S.C. §§ 2000e *et seq*., by discriminating against PLAINTIFF with respect to the terms, conditions, or privileges of employment because of his opposition to the unlawful employment practices at DEFENDANT JC SKYNET.

149.  PLAINTIFF complained about the discriminatory abuse he faced at the hands of DEFENDANT ANTONOVICI and said complaints were ignored.

150.  Instead, PLAINTIFF was further subjected to adverse employment actions, increased scrutiny, humiliation, reduction in salary and work hours, and wrongful constructive termination.

151.  PLAINTIFF was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

152.  SKYNET DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

153.  Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT JC

SKYNET.

154. At all times, DEFENDANT JC SKYNET was aware and/or had actual and constructive notice of its racially hostile work environment and took no action to abate or correct same.

155. Instead, SKYNET DEFENDANTS attacked and retaliated against PLAINTIFF, who engaged in a protected activity while allowing the perpetrator to escape discipline.

156. DEFENDANT JC SKYNET'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by DEFENDANTS in any regard - to the detriment of PLAINTIFF.

157. But for DEFENDANT ANTONOVICI'S respective position at DEFENDANT JC SKYNET, SKYNET DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

158. SKYNET DEFENDANTS had no valid business justification for the retaliatory actions taken against PLAINTIFF following his engagement in protected activity.

159. PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

160. DEFENDANT JC SKYNET is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

161. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

162. SKYNET DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

163. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## AS A THIRD CAUSE OF ACTION
## FOR *DISCRIMINATION* UNDER 42 U.S.C. § 1981 *(As Amended)*
### *(Against All DEFENDANTS Collectively and Individually)*

164. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

165. 42 U.S.C. § 1981 states in relevant part as follows:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> 42 U.S.C. § 1981

166. PLAINTIFF, who is African American/Black, was discriminated against, prevented from entering into or performing contracts, denied equal enjoyment of benefits and privileges of employment, and was discriminated against because of his race/color as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

167. PLAINTIFF was effectively denied full and equal benefit of all laws and immunities as an employee of DEFENDANT JC SKYNET and was denied the right to contract with DEFENDANT JC SKYNET based on his race/color.

168. PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful discrimination and retaliation at DEFENDANT JC SKYNET by DEFENDANT ANTONOVICI, in the presence of and/or with the knowledge of DEFENDANT JC SKYNET.

169. PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially motivated adverse employment actions, unfair/unequal treatment, constructive discharge humiliation and other discriminatory/retaliatory acts.

170. PLAINTIFF complained to SKYNET DEFENDANTS about the discriminatory abuse he faced at DEFENDANT JC SKYNET and was wrongfully constructively terminated as a result.

171. DEFENDANTS, including DEFENDANT ANTONOVICI, were each aware that PLAINTIFF made these complaints and that PLAINTIFF was being retaliated against for same but took no action to prevent known retaliation.

172. PLAINTIFF was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

173. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety,

embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

174. SKYNET DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

175. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS A FOURTH CAUSE OF ACTION**
**FOR *RETALIATION* UNDER 42 U.S.C. §1981 (*As Amended*)**
*(Against All DEFENDANTS Collective and Individually)*

176. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

177. By the acts and practices described above, SKYNET DEFENDANTS retaliated against PLAINTIFF for his opposition to unlawful discrimination under 42 U.S.C. § 1981.

178. SKYNET DEFENDANTS acted with malice and/or reckless indifference to PLAINTIFF'S statutorily protected rights.

179. PLAINTIFF, who is African American/Black, was discriminated against, prevented from entering into or performing contracts, denied equal enjoyment of benefits and privileges of employment, and removed from employment because of his race/color as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

180. PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially motivated adverse employment actions, unfair/unequal treatment, reduction in work hours, humiliation, and other discriminatory/retaliatory acts.

181. PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful discrimination and retaliation at DEFENDANT JC SKYNET by DEFENDANT ANTONOVICI, in the presence of and/or with the knowledge of DEFENDANT JC

21

SKYNET.

182.   PLAINTIFF complained to DEFENDANT ANTONOVICI of the discriminatory abuse he faced at the hands of the DEFENDANT ANTONOVICI.

183.   DEFENDANT ANTONOVICI was aware that PLAINTIFF made these complaints and that PLAINTIFF was being retaliated against for same.

184.   PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

185.   As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

186.   SKYNET DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

187.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## AS A FIFTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER NEW YORK STATE EXECUTIVE LAW

188.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

189.   New York State Executive Law § 296 provides that,

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race,

> creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

190. SKYNET DEFENDANTS have engaged in an unlawful discriminatory practice by discriminating against PLAINTIFF because of his race/color.

191. PLAINTIFF was subjected to discrimination and retaliation at DEFENDANT JC SKYNET as alleged above.

192. PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially motivated adverse employment actions, retaliation, differential treatment, unfair performance reviews, selective supervision, harassment, abuse, wrongful termination, and other discriminatory acts.

193. PLAINTIFF complained about the discriminatory abuse he faced at the hands of his supervisor and said complaint(s) were futile and ignored.

194. Instead, PLAINTIFF was further subjected to a retaliatory hostile working environment, termination, adverse employment action, and other unreasonable acts due to his race/color.

195. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

196. SKYNET DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

197. Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT JC SKYNET.

198. At all times, DEFENDANT JC SKYNET was aware and/or had actual and constructive

notice of its racially hostile work environment against PLAINTIFF and took no action to abate or correct same.

199. Instead, SKYNET DEFENDANTS attacked and retaliated against PLAINTIFF, who engaged in a protected activity while allowing the perpetrators to escape discipline.

200. DEFENDANT JC SKYNET'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by SKYNET DEFENDANTS in any regard - to the detriment of PLAINTIFF.

201. But for DEFENDANT ANTONOVICI'S respective position at DEFENDANT JC SKYNET, SKYNET DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

202. PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

203. DEFENDANT JC SKYNET is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

204. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

205. SKYNET DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

206. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

**AS A SIXTH CAUSE OF ACTION FOR *RETALIATION***

## <u>UNDER NEW YORK STATE EXECUTIVE LAW</u>

207.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

208.   <u>New York State Executive Law</u> § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

209.   PLAINTIFF complained about the discriminatory abuse he faced at the hands of his supervisor, DEFENDANT ANTONOVICI, and said complaints were ignored.

210.   Instead, PLAINTIFF was further subjected to adverse employment actions, increased scrutiny, unreasonable workloads, humiliation and wrongful termination.

211.   PLAINTIFF was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

212.   SKYNET DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

213.   Each DEFENDANT acted pursuant to their authorities as agents of DEFENDANT JC SKYNET.

214.   At all times, DEFENDANT JC SKYNET was aware and/or had actual and constructive notice of its racially hostile work environment and took no action to abate or correct same.

215.   Instead, SKYNET DEFENDANTS attacked and retaliated against PLAINTIFF, who engaged in a protected activity while allowing the perpetrators to escape discipline.

216.   DEFENDANT JC SKYNET'S purported anti-discrimination and anti-retaliation policies were futile and not adhered to by SKYNET DEFENDANTS in any regard - to the detriment of PLAINTIFF.

217. But for DEFENDANT ANTONOVICI'S respective position at DEFENDANT JC SKYNET, SKYNET DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

218. SKYNET DEFENDANTS had no valid business justification for the retaliatory actions taken against PLAINTIFF following his engagement in protected activity.

219. PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

220. DEFENDANT JC SKYNET is strictly liable for the conduct of its supervisors, managers, and owner DEFENDANTS.

221. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

222. SKYNET DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

223. PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

### AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER NEW YORK STATE EXECUTIVE LAW *("Aider and Abettor" Liability Against INDIVIDUAL DEFENDANT ANTONOVICI*)

224. PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

225. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

226. DEFENDANT ANTONOVICI engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory and retaliatory conduct of their principal, DEFENDANT JC SKYNET.

278. PLAINTIFF was subjected to acts of unlawful discrimination and retaliation at DEFENDANT JC SKYNET by his Supervisor, in the presence of and/or with the knowledge of DEFENDANT ANTONOVICI.

227. PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with adverse employment actions, increased scrutiny, unreasonable workloads, humiliation and wrongful termination.

228. Once PLAINTIFF complained to DEFENDANTS of the discriminatory abuse he faced at the hands of his supervisor/coworkers, PLAINTIFF was subjected to further retaliation and was then wrongfully terminated by DEFENDANT JC SKYNET in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

229. PLAINTIFF was subjected to discrimination and retaliation at DEFENDANT JC SKYNET with direct involvement of DEFENDANT ANTONOVICI.

230. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment under the laws as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT JC SKYNET.

231. SKYNET DEFENDANTS had no good faith justification for their actions against PLAINTIFF.

232. Each DEFENDANT, including DEFENDANT ANTONOVICI, acted pursuant to their authorities as agents of DEFENDANT JC SKYNET.

233.   At all times, DEFENDANT JC SKYNET was aware and/or had actual and constructive notice of its racially hostile work environment and took no action to abate or correct same.

234.   Instead, DEFENDANT ANTONOVICI attacked and retaliated against PLAINTIFF, who engaged in protected activity, while allowing the perpetrators to escape discipline with impunity.

235.   But for DEFENDANT ANTONOVICI'S respective position at DEFENDANT JC SKYNET, SKYNET DEFENDANTS would not have been able to subject PLAINTIFF to the discriminatory treatment alleged above.

236.   SKYNET DEFENDANTS had no valid business justification for the retaliatory and termination actions taken against PLAINTIFF following his engagement in protected activity.

237.   PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

238.   As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, suffered: mental and emotional distress, loss of income/earnings, loss of employment, loss of employment opportunities, loss of benefits, inconvenience, pain and suffering, extreme financial hardship, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress, loss of enjoyment of life and other non-pecuniary losses.

239.   DEFENDANT ANTONOVICI'S conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

240.   PLAINTIFF is entitled to the maximum amount of damages allowed under this statute.

## JURY DEMAND

241.   PLAINTIFF requests a jury trial on all issues to be tried.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment against SKYNET

DEFENDANTS:

A.  Declaring that SKYNET DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §1981, Title VII, and the NYSHRL in that SKYNET DEFENDANTS discriminated against PLAINTIFF on the basis of his race/color and retaliated against PLAINTIFF for complaining of discrimination;

B.  Awarding damages to PLAINTIFF for all lost wages and benefits resulting from SKYNET DEFENDANTS' unlawful discrimination and retaliation and to otherwise make his whole for any losses suffered as a result of such unlawful employment practices;

C.  Awarding PLAINTIFF compensatory damages for mental and emotional distress, pain and suffering and injury to his reputation in an amount to be proven;

D.  Awarding PLAINTIFF punitive damages;

E.  Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just and proper to remedy SKYNET DEFENDANTS' unlawful employment practices.

Dated: New York, New York
       January 28, 2021

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                                                    **/S/**
                                        By: _____
                                            Gregory Calliste, Jr., Esq.
                                            Yusha D. Hiraman, Esq.
                                            *Attorneys for Plaintiff*
                                            45 Broadway, Suite 430
                                            New York, New York 10006
                                            T: (212) 248-7431

F: (212) 901-2107
gcalliste@tpglaws.com
yhiraman@tpglaws.com